"The jurors for the State, etc., present, that James Leigh, late of, etc., on, etc., was and yet is one of the acting justices of the peace in and for the said county of Perquimans, and as such bound by the duties of his said office, and by the laws of the State, to issue his warrant for the apprehension of all persons guilty of felony; and the jurors aforesaid do further present, that afterwards, etc., in, etc., a certain negro slave, Jim, the property of one James Leigh, Sr., did commit a felony by feloniously killing and murdering a certain negro slave, Washington, the property of the said James Leigh; and the jurors aforesaid do further present that afterwards, to wit: on, etc., etc., the said James Leigh, Sr., well knowing of the commission of the said crime by the said slave, Jim, as aforesaid, unlawfully and contemptuously neglected and refused to issue his warrant for the apprehension of the said negro slave, Jim, for the *Page 101 
commission of the said felony, as he was bound by the duties of his said office and by the laws of the land to have done, to the great hindrance of justice," etc.
Upon the motion of the defendant his Honor, Judge Settle, quashed the indictment, and Mr. Solicitor Outlaw appealed.
It was probably the object of this appeal to obtain (127) the opinion of the court, whether a justice of the peace be liable to indictment, who, without corruption, neglects to issue a warrant for the apprehension of a person within his county, who the magistrate personally knows, or has reason to believe, has been guilty of felony. But the court does not think it proper to decide that general question upon an indictment framed like the present, which does not raise it.
There are two grounds on which a magistrate may, and ought to grant process for the apprehension of persons charged with crimes. The one is his own personal knowledge when the offense is committed in his presence. Although it has been said that it is indelicate for a magistrate to act on his personal knowledge, and that he ought to apply to another, yet strictly speaking, it is perhaps his duty, especially if it be necessary to prevent an escape. The other ground is probable cause, supported by the oath of some other person. Now, admitting in this last case that it is a duty of a magistrate to grant process, although no felony was committed, in order that due investigation may be had; and admitting, also, this to be a ministerial duty, for the negligent omission of which, though without corruption or any particular bad motive, he would be responsible upon indictment; yet it seems indispensable that the indictment must allege either the commission of the felony and the presence thereat of the magistrate, or, in lieu thereof, a charge before him on oath of probable cause, or at least, an offer of some person to make such charge. The presence of the magistrate, or an accusation or offer to accuse on oath, is necessary to raise the duty of issuing a warrant, and to render the refusal or neglect to do so illegal or contemptuous of the law. In all these particulars the present indictment is deficient.
It charges that "on, etc., at, etc., a certain slave, Jim, the property of one James Leigh, Sr., did commit a felony by feloniously killing and murdering a certain negro slave, Washington, the property of the said James Leigh; and that afterwards, to wit, on the day and year last aforesaid, at and in the county aforesaid, the said James Leigh, Sr., well knowing of the commission of the said crime by the said (128) *Page 102 
negro slave, Jim, as aforesaid, unlawfully and contemptuously neglected and refused to issue his warrant," etc. Not to say anything of the very imperfect manner in which the indictment charges the homicide, which does not appear therefrom to be either murder or manslaughter; it is obvious that no fact is laid which required the magistrate, as a positive duty, to grant a warrant. It said, indeed, that "well knowing he neglected"; but the source and means of knowledge are not specified — whether from personal presence he fully knew the fact of felony, or whether from evidence he knew of probable cause; or whether from rumors he had reason to believe or know that a felony had, or probably had been committed. It seems to us that the allegations of the indictment in these respects are entirely too vague and general.
There is another fatal omission in the indictment. The negligence of the magistrate is criminal, if at all, from its tendency to favor the escape of the offenders. It may be a duty to issue a warrant against a person in the county of the magistrate, upon which an arrest may be made. But it is not the duty of a justice of the peace to grant process against felons in every part of the State. The indictment before us does not allege that the supposed felon was in Perquimans at the time the knowledge of the felony came to the defendant, nor at any time afterwards.
There is also another objection peculiar to this case: Upon the face of the indictment the defendant was the owner of both the slaves — the slain and the slayer. A master is not more excusable in law than justifiable in morals, for contriving or assisting the escape of his slave, who has committed felony. But while that is so, he is not, in our opinion, bound, if at liberty, to be judicially or officially active against him in any stage of the prosecution. Passing by the interest of the owner, their relation imposes on him the obligation of the slave's defense, and the law generally charges him with it as a duty alike to the slave and to the fair administration of public justice. Prosecution and defense are so incompatible that the two duties cannot be incumbent on the same person.
It is, upon the whole, so clear that no judgment could be (129) pronounced on this indictment, as to render it improper to put the defendant to his plea. It was, in the opinion of the court, properly quashed.
PER CURIAM. Judgment affirmed.
Cited: Shelfer v. Gooding, 47 N.C. 177; Nissen v. Cramer, 104 N.C. 576. *Page 103